*Sarr v. Garland*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2021

(Submitted: April 19, 2022      Decided: October 12, 2022)

No. 20-3836

———————————————

MAMADOU AMADOU SARR

*Petitioner,*

-v.-

MERRICK GARLAND, ATTORNEY GENERAL OF THE UNITED STATES

*Respondent.*

———————————————

Before:      LIVINGSTON, *Chief Judge*, CABRANES and LOHIER, *Circuit Judges*.

Petitioner Mamadou Amadou Sarr ("Sarr") petitioned for review of the decision of the Board of Immigration Appeals to uphold the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture. An Immigration Judge, as authorized by Congress, conducted the removal proceeding via video teleconference. *See* 8 U.S.C. § 1229a(b)(2). In this opinion, we consider Sarr's motion for a stay of removal pending resolution of his case and the government's motion to transfer the petition for review on the basis that venue lies in the Fifth Circuit.

1

Turning first to the transfer motion, we conclude that the Fifth Circuit is the proper venue for his petition for review because jurisdiction vested in Louisiana and there was no change of venue after removal proceedings commenced. Still, in light of Sarr's understandable confusion about the proper venue for his petition, the period of time in which the petition has been pending before this Court, and the fact that his counsel is based in New York, we **DENY** the government's motion to transfer. Thus, we proceed to consider Sarr's motion for a stay of removal, which we **DENY** due to Sarr's failure to demonstrate either a strong showing that he is likely to succeed on the merits of his claim or that he will be irreparably injured absent a stay.

FOR PETITIONER:                    Lara Nochomovitz, Chagrin Falls, Ohio.

FOR RESPONDENT:                    Jeffrey Bossert Clark, Acting Assistant Attorney General, Carl McIntyre, Assistant Director, Andrew Oliveira, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C.

DEBRA ANN LIVINGSTON, *Chief Judge*:

Congress has expressly permitted immigration judges to conduct removal proceedings via video teleconference ("VTC") rather than in person. *See* 8 U.S.C. § 1229a(b)(2); *see also* 8 C.F.R. § 1003.25(c). In such remote proceedings, the Immigration Judge ("IJ"), respondent, and counsel may each participate from different locations. The Executive Office for Immigration Review ("EOIR") has long promoted the use of VTC proceedings as a "reliable and effective tool" to ensure timely adjudication of cases and maximize the convenience of the parties. James R. McHenry III, Dir., Exec. Off. For Immigr. Rev., *Interim Operating Policies and Procedures Memorandum No. 21-03*: *Immigration Court Hearings Conducted by Telephone and Video Teleconferencing* 3 (Nov. 6, 2020). More recently, the agency has taken steps to further enable VTC proceedings in immigration courts across the country. *Id*. Indeed, due in part to the expanded capacity and need for remote proceedings, particularly during the COVID-19 pandemic, the share of immigration proceedings conducted remotely has increased more than twofold over the past five years, from about seventeen percent in the 2017 fiscal year to about forty-six percent in the 2021 fiscal year. Exec. Off. for Immigr. Rev., *Adjudication Statistics: Hearings Adjournments by Medium and Fiscal Year* (Apr. 18,

2022), https://www.justice.gov/eoir/page/file/1508566/download (last visited Aug. 5, 2022).

This opinion arises from a VTC proceeding regarding Petitioner Mamadou Amadou Sarr's ("Sarr") application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). An IJ conducted Sarr's hearings from New York while Sarr was detained in Louisiana. After the IJ denied relief and the Board of Immigration Appeals ("BIA") dismissed his subsequent appeal, Sarr petitioned for review of the BIA's decision in this Court pursuant to 8 U.S.C. § 1252. He also moved for a stay of removal pending resolution of his case. In turn, the government opposed the motion for a stay of removal and moved to transfer the petition for review on the basis that venue lies in the Fifth Circuit. A panel of this Court granted Sarr a temporary stay of removal and referred the government's transfer motion to this counseled motions panel.

Under section 242(b)(2) of the Immigration and Nationality Act ("INA"), venue for a petition for review is proper in the circuit "in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2). We have not had occasion to consider this statutory language in the context of a VTC hearing, and

so decide the transfer motion here by published opinion. For the reasons stated herein, we conclude that Sarr's proceedings were completed in the Fifth Circuit. Nonetheless, we exercise our discretion to **DENY** the government's motion to transfer the petition in light of Sarr's understandable confusion about the proper venue for his petition, the period of time in which Sarr's petition has been pending before this Court, and the fact that Sarr's counsel is based in New York. Furthermore, because Sarr has failed to demonstrate either a strong showing that he is likely to succeed on the merits of his claim or that he will be irreparably injured absent a stay, we **DENY** his motion for a stay of removal. The case will proceed in due course.

## BACKGROUND

### I. Factual Background[1]

Sarr, a native and citizen of Mauritania, entered the United States in June 2019 at an unknown location without a valid visa, permit, or other entry document. About two months later, on August 16, 2019, the Department of

---

[1] Because the government's motion to transfer and Sarr's motion for a stay of removal do not turn on the underlying facts of Sarr's case, we provide a summary of the facts only as necessary to explain our rulings on the motions. The streamlined factual background presented is derived from the findings of the IJ based on Sarr's individual merits hearing and submissions to the IJ.

Homeland Security ("DHS") served Sarr with a Notice to Appear ("NTA") that charged him as removable because he was not admitted or paroled. The NTA lists Sarr as a detainee at a correctional facility in Mississippi and ordered his appearance before an IJ at a processing center in Jena, Louisiana. The version of the NTA within the certified administrative record ("CAR") for this case includes a "Richwood" stamp at the top right corner — presumably denoting the Richwood, Louisiana correctional center — and a "Received" stamp from the Batavia, New York immigration court on the right side.

## II.  Procedural History

Sarr conceded removability and applied for asylum, withholding of removal, and protection under the CAT, claiming past persecution and a well-founded fear of future persecution on the basis of his race and membership in a particular social group. The CAR contains notices for four hearings, including Sarr's master calendar hearing and individual merits hearing. All four hearing notices cite Richwood, Louisiana as the location of the hearing. The first two hearing notices list the Batavia, New York immigration court at the top of the notice and order case-related correspondence to be filed at that court. The

remaining two hearing notices list the Buffalo, New York immigration court at the top of the notice and order case-related correspondence to be filed at that court.

Sarr's individual merits hearing took place on April 13, 2020, via VTC, with Sarr participating from the detention facility in Louisiana, the IJ participating from an immigration court in New York, and counsel and an interpreter participating telephonically from locations undeclared in the hearing transcript. At the beginning of the hearing, the IJ stated: "The Court is located in Buffalo. Respondent is in DHS custody at Richwood Correctional Center. . . . [Counsel] representing the DHS is appearing via telephone. [Counsel] representing [R]espondent is appearing telephonically. . . . [T]he [R]espondent is via VTC." CAR 111. The certificate page of the transcript of the hearing lists "Buffalo, New York" below Sarr's name and A-number.

In an April 22, 2020 written decision, the IJ denied relief to Sarr, concluding that, *inter alia*, his testimony was not credible, he had failed to provide sufficient reasonably available corroborative evidence to establish past persecution, and he had failed to establish a claim for a well-founded fear of future persecution. The IJ cited to cases from various circuit courts but primarily relied on Fifth Circuit precedent. *See, e.g.*, CAR 78 ("Pursuant to legal precedent in the United States

7

Court of Appeals for the Fifth Circuit . . . .").   The IJ's decision listed the Buffalo, New York immigration court at the top of the first page.

On October 16, 2020, the BIA affirmed the IJ's denial of relief and dismissed the appeal, finding no clear error in the IJ's adverse credibility finding and concluding that Sarr had failed to satisfy his burden of proof to establish eligibility for asylum or withholding of removal.   Citing to EOIR Operating Policies and Procedures Memorandum No. 04-06, the BIA stated in a footnote that "removal proceedings before the Immigration Judge in this matter were completed at the Richwood Correctional Facility" and that "[t]he case was docketed for hearing in Richwood, LA, and the Immigration Judge, while sitting in the Immigration Court in Buffalo, NY, heard the case through video conference."   CAR 3 n.1.   The BIA applied Fifth Circuit law to Sarr's appeal.

On November 12, 2020, Sarr timely petitioned this Court for review of the BIA's decision.   The petition asserted that venue was proper in the Second Circuit under 8 U.S.C. § 1252(b)(2) because the IJ "completed the proceedings" in Buffalo, New York.

Upon submitting his petition, Sarr moved for a stay of removal pending resolution of his case as well as for leave to proceed *in forma pauperis*. The government opposed the stay of removal and moved to transfer the petition and the motion for a stay of removal to the Fifth Circuit on the basis that venue was proper in the Fifth Circuit. Sarr opposed the motion to transfer.

On March 24, 2022, a panel of this Court considered the trio of motions on the Non-Argument Calendar. Noting that "the statute and the regulations do not provide a clear answer as to the proper venue for this case, where the removal hearing was conducted through video teleconferencing," the panel referred the case to the instant panel on the Regular Argument Calendar to resolve the government's motion to transfer venue and Sarr's motion for a stay of removal. Ct. Order, Mar. 24, 2022. The panel also granted Sarr leave to proceed *in forma pauperis* and a temporary stay of removal pending resolution of the transfer motion.[2]

---

[2] Sarr has been released from ICE detention, according to his counsel.

# DISCUSSION

As noted by the panel that originally considered these motions, we must consider Sarr's motion for a stay of removal in light of our resolution of the government's motion to transfer venue. Accordingly, we turn first to the transfer motion. For the following reasons, we conclude that the Fifth Circuit is the proper venue for Sarr's petition for review. Still, in light of Sarr's understandable confusion about venue, the period of time in which the petition has been pending before this Court, and the fact that his counsel is based in New York, we **DENY** the government's motion to transfer. Thus, we proceed to consider Sarr's motion for a stay of removal, which we **DENY** due to Sarr's failure to demonstrate either a strong showing that he is likely to succeed on the merits of his claim or that he will be irreparably injured absent a stay.

## I.     Motion to Transfer

We begin with the government's motion to transfer venue to the Fifth Circuit. Section 242(b)(2) of the INA provides that a petition for review of an order of removal "shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2). In the government's view, even though the IJ physically sat in New York, Sarr's

removal proceedings were "completed" in Louisiana, and thus venue is proper in the Fifth Circuit. In support of its position, the government notes principally that the BIA and the IJ treated Sarr's case as originating from the Fifth Circuit. Yet Sarr contends that venue properly lies in the Second Circuit. He notes that the case caption and hearing transcript identify Buffalo, New York as the administrative location of his hearing, demonstrating that the IJ "completed" the proceedings in New York. We conclude that venue is proper in the Fifth Circuit but exercise our discretion to retain Sarr's petition in this Court.

A

Neither this Court nor the Supreme Court has directly opined on the question presented here: in which judicial circuit does an IJ involved in a VTC immigration proceeding "complete[]" the proceeding for the purpose of designating venue under § 1252(b)(2)?[3] On its face, the text of the provision does not make clear whether an IJ "complete[s]" the proceedings in the place where the

---

[3] Although this Court has considered motions to transfer § 1252 petitions for review on the basis of improper venue, we have not yet discussed the implications of the use of VTC proceedings on the determination of venue. *See, e.g.*, *Diallo v. Holder*, 449 F. App'x 64, 65 n.1 (2d Cir. 2011) (summary order); *Bing Zheng v. Gonzales*, 176 F. App'x 169, 169–70 (2d Cir. 2006) (summary order).

11

case is docketed, the physical location of the IJ during the hearings, the location of the immigration court with administrative control of the case, or the location of the petitioner at a particular point in the proceedings, to name a few potential possibilities for venue. As such, some circuit courts have called on the government to further clarify the provision. *See Ramos v. Ashcroft*, 371 F.3d 948, 949 (7th Cir. 2004) (noting that the provision has "enough ambiguity" as applied to VTC proceedings that further clarification by the government would be "well advised"); *Thiam v. Holder*, 677 F.3d 299, 302 (6th Cir. 2012) (urging rulemaking to "provide much needed guidance as to the meaning of § 1252(b)(2) in the new age where parties, counsel, and judge may only be virtually co-located").

Although the meaning of "completed" in § 1252(b)(2) is ambiguous in the context of a VTC proceeding, the CAR here provides much needed clarity: it indicates that the IJ "completed" the proceedings against Sarr in the same state where they began — Louisiana. Thus, venue properly lies in the Fifth Circuit. Under federal regulations, "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by [DHS]." 8 C.F.R. § 1003.14(a). Here, the charging document, which is the notice to appear according to 8 U.S.C. § 1003.13, identifies

Jena, Louisiana as the "[a]ddress of [the] Immigration Court." CAR 462. Accordingly, jurisdiction vested and proceedings against Sarr commenced in an immigration court sitting in Louisiana.

Nothing after Sarr's proceedings commenced in Louisiana suggests that venue ever moved elsewhere. First, an "Immigration Judge, for good cause, may change venue *only* upon motion by one of the parties, after the charging document has been filed with the Immigration Court." 8 C.F.R. § 1003.20 (emphasis added). There is no such motion in the CAR. Second, each of Sarr's hearing notices provides a Louisiana address as the location of Sarr's removal hearing.

That the hearing notices cite either the Batavia or Buffalo, New York immigration courts as the filing location for any correspondence may well have created reasonable confusion. But these citations effected no change of venue. As noted, there was no motion to change venue from Louisiana, which, under 8 C.F.R. § 1003.20, would have been legally required to change the venue to New York. And there was also good reason to include reference to the New York immigration courts: they served as "administrative control courts" for the proceedings. Under federal regulations, the "administrative control Immigration Court" is the court that "creates and maintains Records of

13

Proceedings for Immigration Courts within an assigned geographical area." *Id.* C.F.R. § 1003.11; *see also id.* § 1003.13 (defining "[a]dministrative control" as "custodial responsibility for the Record of Proceeding"). The immigration control courts in Batavia and Buffalo, New York did not wrest venue from Louisiana. Rather, they merely "serviced" the Louisiana proceeding. [4] *Administrative Control List*, U.S. DEP'T OF JUST., https://www.justice.gov/eoir/immigration-court-administrative-control-list (last updated Aug. 23, 2022). This is also why a Batavia, New York stamp appears on the NTA and why a Buffalo, New York header appears at the top of the IJ decision.

In reaching our conclusion that an IJ "completes" proceedings and, thus, venue lies in the location where — absent evidence of a change of venue — proceedings commenced, we respectfully decline to follow the holdings of some of our sister courts. Some of our sister circuits determine venue for petitions for review by "viewing the[] facts as a composite," with varying emphasis on factors such as the physical location of the parties and the IJ or court, the locations cited

---

[4] In a highly analogous case, the BIA held that an immigration judge conducting a remote removal hearing from the administrative control court in Batavia, New York "completed" removal proceedings from Louisiana, "where the respondent was located and the hearing was docketed." *Matter of R-C-R-*, 28 I. & N. Dec. 74, 74 n.1 (B.I.A. 2020).

on the NTA and hearing notices, and the circuit law applied by the BIA. *Sorcia v. Holder*, 643 F.3d 117, 123 (4th Cir. 2011); *see, e.g.*, *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831–32 (9th Cir. 2022) (considering several variables, including the court of administrative control, the venue deemed proper by the BIA, and the hearing location designated on the notice for the final hearing, in deciding whether to transfer a motion); *Yang You Lee v. Lynch*, 791 F.3d 1261, 1264 (10th Cir. 2015) (transferring a petition to Fifth Circuit after considering the location where the NTA ordered the petitioner to appear, the physical locations of the IJ and petitioner during the final hearing, and the place from which the IJ issued the final order). We appreciate the appeal of a multifactor approach that helps to capture the complexity of modern proceedings.[5] But we believe our approach hews more closely to the law as written, absent any clarification from Congress that some have requested. *See Thiam*, 677 F.3d at 302; *see also Ramos*, 371 F.3d at 949 (calling for immigration officials to issue regulations clarifying the application of § 1252(b)(2)).

---

[5] We recognize that in some circumstances, it may be necessary to consider other factors, such as if the location of the proceeding on the charging document is unclear or if it is uncertain whether a change of venue occurred.

Other sister circuits have developed bright-line rules dissimilar from our own. *See, e.g.*, *Herrera-Alcala v. Garland*, 39 F.4th 233, 241 (4th Cir. 2022) (holding that under a "straightforward reading of the statutory text," venue under § 1252(b)(2) lies and an IJ "complete[s]" proceedings in the location where the IJ physically "sat . . . during the proceedings"); *Ramos*, 371 F.3d at 949 (holding that a petition for review is appropriate where the immigration court is located rather than where the parties appeared for a VTC hearing). We disagree that the venue provision unambiguously refers to the *physical* location of the IJ. An IJ who is *not* physically present in a location can undertake a variety of actions that "complete" a proceeding (by conducting a VTC hearing pursuant to the law of the circuit on the charging document, for instance). Moreover, our approach clarifies how to identify venue in circumstances involving multiple immigration courts, some of which may be administrative control courts. Further, construing § 1252(b)(2) to hinge venue entirely on the IJ's physical location could well defeat the participants' reasonable expectations as to where to seek review and what law applies.[6]

---

[6] The instant petition suggests as much. Here, even though the IJ in Sarr's case participated via VTC from New York, the notices for all four hearings cite Richwood, Louisiana as the location of the hearing. The decision of the IJ, moreover, primarily relies on Fifth Circuit precedent, suggesting that the IJ considered herself to have

B

We turn next to the question of whether to transfer Sarr's petition for review in light of our holding that venue lies in the Fifth Circuit. Section 1252(b)(2) is solely a venue provision and does not bear on our jurisdiction. *See Moreno-Bravo v. Gonzales*, 463 F.3d 253, 262 (2d Cir. 2006). Accordingly, we are "not compelled" to transfer a petition for review that was filed in the wrong circuit. *Maldonado-Padilla v. Holder*, 651 F.3d 325, 327 (2d Cir. 2011) (Jacobs, C.J., in chambers).

In considering whether to transfer a petition for review, this Court weighs, *inter alia*, (1) whether the parties have provided a "compelling reason," *id.* at 328, to retain or transfer the petition; (2) whether transfer would result in "duplicative proceedings" in a sister circuit based on the period of time in which the petition has been pending and the extent to which the case has been briefed and argued; and (3) whether the case is a "sure loser" on the merits and would waste the time of another court, *Moreno-Bravo*, 463 F.3d at 263 (considering whether to transfer a habeas petition converted to a § 1252 petition with reference to the "analogous

---

"completed the proceedings" from the Fifth Circuit. *See* CAR 78 ("Pursuant to legal precedent in the United States Court of Appeals for the Fifth Circuit . . . ."). Likewise, the BIA applied Fifth Circuit law to Sarr's appeal.

17

scenario" of transferring a case for want of jurisdiction under 28 U.S.C. § 1631). Other circuits have considered "the reasonableness of an alien's confusion about the proper venue and whether transfer will delay resolution, inconvenience the parties, or waste judicial resources because the petition is wholly without merit." *Yang You Lee*, 791 F.3d at 1266 (collecting cases). Courts have also looked to the parties' reliance on the law of a particular circuit, including whether the same proposition can be found in the law of the instant or higher court, *id.* at 1267; *Sorcia*, 643 F.3d at 123–24, and the location of the petitioner's counsel, *see Cordova-Soto v. Holder*, 732 F.3d 789, 792 (7th Cir. 2013).

While we have concluded that the Fifth Circuit is the proper venue for Sarr's petition, we decline to transfer the petition. Considering the ambiguity of the law on venue in immigration proceedings and the mixed notations of location across the NTA, the hearing notices and transcript, and the decisions of the BIA and IJ, Sarr's "confusion regarding where the proceedings were completed is understandable." *Sorcia*, 643 F.3d at 123. To be sure, because the case has not been fully briefed, it is not clear whether the case is a "sure loser" that would "waste the time" of the transferee court. *Moreno-Bravo*, 463 F.3d at 263. But Sarr's case has been lodged with this Court for more than twenty-one months, so

18

transfer to the Fifth Circuit may simply "delay resolution" of the matter. *Md-Abu v. Garland*, No. 20-9594, 2021 WL 4496470, at *3 (10th Cir. Oct. 1, 2021). Finally, Sarr's counsel is based in New York while "the government litigates immigration cases nationwide," indicating that transfer may prove especially inconvenient for Sarr. *Yang You Lee*, 791 F.3d at 1266. In short, it is "in the interest of justice" to maintain jurisdiction of Sarr's case. *Moreno-Bravo*, 463 F.3d at 263 (quoting 28 U.S.C. § 1631 in a discussion of whether to transfer a petition where jurisdiction exists).

To the extent that the choice of whether to apply Second Circuit or Fifth Circuit law would dictate the outcome on the merits of Sarr's petition, we are confident that the parties can alert the merits panel of any relevant differences in the precedent of either circuit.

## II. Motion for a Stay of Removal

Having decided to retain jurisdiction over Sarr's petition, we turn last to Sarr's motion for a stay of removal pending resolution of his case. Sarr argues that he is entitled to a stay principally because the BIA erroneously applied Fifth Circuit precedent even though the IJ conducted his hearing from a city within the Second Circuit; this, he asserts, was "fundamentally unfair" and thus violated his

19

Fifth Amendment right to due process. He also conclusorily contends that a denial of a stay of removal would result in his forcible return to a place of persecution and render his petition for review moot. For the following reasons, we deny the motion.

"'A stay is not a matter of right, even if irreparable injury might otherwise result.' It is instead 'an exercise of judicial discretion,' and . . . [t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). A court of appeals must consider four factors in deciding whether to grant a stay of removal:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). "The first two factors . . . are the most critical," *id.*, and where, as in this case, the government is the party opposing the stay, the third and fourth factors "merge," *id.* at 435.

Sarr's argument on the first factor turns entirely on the claim that the BIA erred in applying Fifth Circuit law. He contends that the BIA's failure to apply Second Circuit law resulted in reversible error. However, because we have concluded that venue is proper in the Fifth Circuit, his motion fails to make the requisite "strong showing that he is likely to succeed on the merits" of this claim. *Id.* at 434.

As for the second factor — irreparable harm — Sarr conclusorily argues that his removal to Mauritania would render his petition for review moot. But "the burden of removal alone cannot constitute the requisite irreparable injury," as "[a]liens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return." *Id.* at 435. Sarr's motion ignores the fact that he may continue to pursue his petition from abroad and, if successful, would be afforded relief by the facilitation of his return.

As his reasoning under the remaining factors is insufficient to outweigh his deficiencies on the first and second factors, we decline to grant the stay. We understand, of course, that the government's forbearance policy, *see In re Immigr. Petitions for Rev. Pending in U.S. Ct. of Appeals for the Second Cir.*, 702 F.3d 160, 162

(2d Cir. 2012) (mem.), is likely to mean that the government will not remove Sarr pending the resolution of his petition to a merits panel or prior to notifying this Court of its intention to remove Sarr imminently.

## CONCLUSION

To summarize, we hold the following:

(1) In the context of a VTC hearing, an IJ "complete[s]" proceedings under 8 U.S.C. § 1252(b)(2) in the same location where proceedings commenced, unless there is evidence of a change of venue.

(2) It is in the "interest of justice" for the Second Circuit to maintain jurisdiction over this case: Sarr was understandably confused about the proper venue for his petition, which has been pending before this Court for nearly two years, and his counsel is based in New York.

(3) Sarr has failed to demonstrate either a strong showing that he is likely to succeed on the merits of his claim or that he would suffer irreparable injury absent a stay.

For the foregoing reasons, we **DENY** the government's motion to transfer the petition to the Fifth Circuit, and we **DENY** Sarr's motion for a stay of removal. The case will proceed in due course.

22